1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7             FOR THE DISTRICT OF ARIZONA

8

9  Matias Velazquez             )   No.  CV-11-820-RCB (LOA)

                                )       CR-97-361-RCB

10         Movant,        )

                                  )   **AMENDED REPORT**

11  vs.                       )   **AND RECOMMENDATION**

                                  )

12  United States of America,     )

                                  )

13         Respondent.    )

                                  )

14  _____)

15       This matter arises on Movant's Motion to Vacate, Set Aside, or Correct Sentence

16 Pursuant to 28 U.S.C. § 2255. (Doc. 1)  Respondent has filed a Response, to which Movant

17 has replied. (Docs. 10, 16)  For the reasons set forth below, although Movant is not entitled

18 to relief under § 2255, he appropriately requests a writ of error *coram nobis*, which should

19 be granted.

20 **I. Procedural Background**

21    **A.  Charges, Guilty Plea, and Sentencing**

22       On August 15, 1997, Movant plead guilty in the United States District Court,

23 District of Arizona, to a one-count information charging a conspiracy to defraud the United

24 States in violation of 18 U.S.C. § 286. (Respondents' Exh. 11)  Movant's conviction was

25 based on his conduct while working as a manager at a San Luis, Arizona tax preparation

26 business. In 1993, Movant submitted thousands of false claims for the Earned Income Credit

27

28

("EIC") on federal income tax returns for low-income clients. (Respondents' Exh. 15[1])
Although Plaintiff knew the clients did not qualify for the EIC, he submitted the returns
because it generated refunds for his clients and fees for the business based on refund
anticipation loans ("RALs"). (Respondents' Exh. 15)  Movant earned a monthly salary, plus
a $10.00 bonus for each RAL he generated.  (Respondents' Exh. 15)  At sentencing, the
Court found that the loss amount was $285,180.00, but that only $95,121.00 of this amount
was attributable to Movant.  (Respondents' Exhs. 12, 13)

　　　　　Movant is a citizen of Mexico who has been a lawful permanent resident since
November 21, 1989. (Respondents' Exh. 18)  In his Declaration dated June 13, 2011,
Movant's defense attorney, Jose de la Vara, provided the following information about his
representation of Movant:

> I did not believe at the time that the guilty plea or criminal conviction in
> this case would necessarily result in deportation.  I do no recall discussing
> with Mr. Valazquez whether the criminal conviction would be classified
> as an aggravated felony.
>
> I recognized, however, that the crime could have immigration consequences.
> I knew that it could be classified as a crime involving moral turpitude, and I
> spoke with the prosecutor about these concerns.  The prosecutor did not offer
> Mr. Velazquez a plea agreement to any other offense to help him avoid
> immigration consequences.  The prosecutor did agree, though, to ask the Court
> to recommend to the Immigration and Naturalization Service (INS) that Mr.
> Velazquez not be deported as a result of the conviction.  I anticipated that this
> would likely allow him to stay in the United States.
>
> I told Mr. Velazquez that I could not guarantee what the INS would do, even
> with the Court's recommendation.  I did not promise Mr. Velaquez that he
> would not be deported, nor did I tell him that his conviction would result in
> automatic deportation.  I told him that it was up to the INS whether he would
> be deported, but that, in my experience, the INS usually followed the Court's
> recommendation about deportation.

(Respondents' Exh. 24 at 1-2)

　　　　　Defense counsel negotiated a promise from the prosecutor to seek a
recommendation from the court that the INS not deport Movant based on the criminal
conviction.  The plea agreement included the following provision:

---

[1]  Respondents' Exhibit 15, the presentence investigation report, is filed under seal at
docket 9.

- 2 -

> The Government will ask the Court to recommend to the Immigration and Naturalization Service that the defendant not be deported from the United States of America for his involvement in the instant criminal activity.  It is fully within the Court's discretion whether it follows this recommendation.

(Respondents' Exh. 14; Doc. 1, Exh. 1)

During Movant's August 15, 1997 change-of-plea hearing, the Court discussed this provision and Movant stated that he understood it was within the Court's discretion whether to recommend that INS not deport Movant.  (Respondents' Exh. 16 at 44)   Movant also confirmed the accuracy of the factual basis in the plea agreement, and that he was pleading guilty because he was guilty of the charged offense.  (Respondents' Exh. 16 at 47-49)

Movant was sentenced on June 14, 1999. The Court granted a downward departure and sentenced Movant to four years of probation. (Respondents' Exh. 17 at 27) As a special condition of probation, the Court ordered that, "if deported, the Defendant shall not reenter the United States without legal authorization and the permission of this court." (Respondents' Exh. 17, at 28)  The Court further stated that it "elected to decline to make the recommendation [that INS not deport Movant] without prejudice," so that "if inquiry is made, the court may reconsider its determination when it makes such recommendation." (Respondents' Exh. 17 at 30)

**B.  Immigration Proceedings**

At the time of his guilty plea and sentencing, Movant was trying to obtain United States citizenship. On January 17, 1996, he completed a Form N-400, Application for Naturalization, with the assistance of a non-attorney representative from Chicanos Por La Causa. (Respondents' Exh. 18)  On April 17, 2002, Movant withdrew his application after determining that his federal conviction made him ineligible for naturalization. (Respondents' Exh. 19)

Movant completed a second application for naturalization on July 26, 2007 with assistance from American Beginnings, an organization in Yuma, Arizona.  (Respondents' Exh. 20 at 10)  The application did not include Movant's federal criminal conviction.

1   However, when Movant was interviewed on September 10, 2008, Movant disclosed his

2   conviction.  (Respondents' Exh. 20 at 8, 10; Exh. 21)  Immigration authorities determined

3   that Movant's criminal conviction constituted an aggravated felony that rendered him

4   deportable.  On November 8, 2010, the Department of Homeland Security ("DHS") issued a

5   Notice to Appear charging Movant with removability based on his 1999 conviction for

6   conspiracy to defraud the United States, in violation of 18 U.S.C. § 286.  (Respondents'

7   Exh. 22)  The Notice to Appear explained that Movant's plea agreement stipulated that the

8   loss to the Government attributable to Movant was $95,121.00, which made his conviction

9   an aggravated felony under section 101(1)(43)(M)(i) of the Immigration and Nationality Act

10  ("INA").  (*Id*.)  Movant's application for naturalization was denied due to his placement in

11  removal proceedings.  (Respondents' Exh. 23)

**C. Movant's Claim for Relief**

13          Subsequent to Movant's conviction, the United States Supreme Court decided

14  *Padilla v. Kentucky*, ___ U.S.___, 130 S.Ct. 1473 (2010).  Relying on *Padilla*, Movant

15  argues that his defense counsel was ineffective for failing to advise him of the deportation

16  consequences of his plea, and that his guilty plea was involuntary and should be vacated,

17  and his conviction reversed. (Doc. 1)  Alternatively, Movant asks the Court to expunge his

18  conviction.  In response, the Government argues that the Court should deny Movant's

19  request for relief because he has been released and does not satisfy the custody requirement

20  to qualify for relief under § 2255. (Doc. 10)  The Government further argues that Movant

21  does not provide any authority in support of his request for expungement.  And, to the extent

22  that Movant seeks *coram nobis* relief, he has not shown good reason for delay and he has not

23  demonstrated fundamental error.   The Court will consider these issues below.

**II. Custody Requirement**

25          The Court agrees with the Government that, because Petitioner is no longer in

26  custody, he is ineligible for § 2255 relief.  Title 28 U.S.C. § 2255 provides that, "[a] prisoner

27  in custody under sentence of court" may attack the validity of his conviction under §2255(a).

28  In this case, Movant has already served his four-year term of probation. Thus, he is no

1   longer in custody for purposes of § 2255(a).  *See Resendiz v. Kovensky*, 416 F.3d 952, 958

2   (9th Cir. 2005) (holding that immigration custody resulting from criminal conviction does

3   not satisfy the "in custody" requirement of 28 U.S.C. § 2254.).  Although Movant is not

4   entitled to § 2255 relief, he may be entitled to a writ of error *coram nobis*, which the Court

5   addresses below.

6   **III.  Writ of Error Coram Nobis**

7          Although Movant's Motion did not specifically seek *coram nobis* relief, he

8   requested that the Court expunge his conviction, and courts have construed a request for

9   expungement as a petition for *coram nobis* relief.  *See United States v. Reguer*, 901 F.Supp.

10  515, 517 (E.D.N.Y. 1995) (construing request for expungement as petition for a writ of error

11  *coram nobis*).  *See also United States v. Morgan*, 346 U.S. 502, 511 (1954) (clarifying that a

12  federal court is authorized "to issue a writ of error coram nobis, pursuant to the All Writs

13  Act, 28 U.S.C. § 1651(a) "under all circumstances compelling such action to achieve

14  justice.").  Additionally, the Government raised the issue of *coram nobis* in its response and

15  Movant has addressed the issue in his reply. (Docs. 10, 13)  The Court, therefore, finds that

16  Movant has sufficiently requested *coram nobis* relief and that his request has been fully

17  briefed and is properly before this Court.

18         "The writ of error coram nobis affords a remedy to attack a conviction when the

19  petitioner has served his sentence and is no longer in custody." *Estate of McKinney By &*

20  *Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995). "The writ provides a

21  remedy for those suffering from the 'lingering collateral consequences of an unconstitutional

22  or unlawful conviction based on errors of fact' and 'egregious legal errors.'" *United States v.*

23  *Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989) (quoting *Yasui v. United States*, 772 F.2d

24  1496, 1498, 1499 & n. 2 (9th Cir. 1985)).  The writ of *coram nobis* permits a court to vacate

25  its judgment when an error has occurred that is of "'the most fundamental character,' such

26  that the proceeding itself is rendered 'invalid.'" *McKinney*, 71 F.3d at 781 (citing

27  *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)). The Supreme Court and

28  Ninth Circuit have "long made clear that the writ of error coram nobis is a highly unusual

1  remedy, available only to correct grave injustices in a narrow range of cases where no more

2  conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir.

3  2007). *See also Morgan*, 346 U.S. at 511.

4         The Ninth Circuit requires that a movant seeking *coram nobis* relief establish that:

5  "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the

6  conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case or

7  controversy requirement of Article III; and (4) the error is of the most fundamental

8  character." *Hirabayashi*, 828 F.2d 591, 604 (9th Cir.1987). Because these requirements are

9  conjunctive, failure to satisfy any one requirement is fatal. *See e.g. United States v.*

10 *McClelland*, 941 F.2d 999, 1002 (9th Cir.1991). The Court will consider these requirements

11 below.

12     **A.  More Usual Remedy**

13        The parties do not dispute that Movant satisfies the first requirement. Because

14 Movant is no longer in custody and, therefore, is ineligible for § 2255 relief, he does not

15 have a more usual remedy available. *United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir.

16 2005) (finding that petitioner established that he did not have a more usual remedy available,

17 by establishing that he was not in custody, and thus, ineligible for habeas corpus relief or §

18 2255 relief), *abrogated on other grounds by Padilla v. Kentucky*, __ U.S.__, 130 S.Ct. 1473

19 (2010).

20     **B.  Failure to Attack Conviction Earlier**

21        There is no statute of limitations on filing a petition for writ of error *coram nobis*.

22 *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994). "Rather, the petition is subject

23 to the equitable doctrine of laches," which "bars a claim if unreasonable delay caused

24 prejudice to the defendant." *Id*. (citing *International Tel. & Tel. Corp. v. General Tel. &*

25 *Elecs. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975)). Thus, a petitioner must provide a valid or

26 sound reason for not having attacked his conviction earlier. *United States v. Hubenig*, 2010

27 WL 2650625, * 2 (E.D.Cal. July 1, 2010) (citing *Telink*, 24 F.3d at 45). "Few courts have

28 expounded on what constitutes a "valid" or "sound" reason but the writ has been denied

1    when a petitioner provides no explanation or appears to be abusing the writ and when the

2    respondent demonstrates prejudice as a result of the delay." *Hubenig*, 2010 WL 2650625, *

3    2 (citing *Kwan*, 407 F.3d at 1013). A district court considering a petition for writ of *coram*

4    *nobis* may deny the writ "if the petitioner inexcusably delays in asserting his claims and the

5    government is prejudiced by the delay." *Telink*, 24 F.3d at 47. "In making a determination of

6    prejudice, the effect of the delay on both the government's ability to respond to the petition

7    and the government's ability to mount a retrial are relevant." *Id*. at 48.

8            Here, Movant asserts that he was unaware of the impact his 1999 federal fraud

9    conviction would have on his immigration status until November 2010 when the

10   Government initiated deportation proceedings against him.  (Doc. 1; Respondents' Exh. 21)

11   Movant filed the instant Petition on March 31, 2011. At the time of Movant's guilty plea, the

12   possibility of deportation was discussed with defense counsel. Defense counsel, Jose de la

13   Vara, told Movant that he "could not guarantee what the INS would do, even with the

14   Court's recommendation," and that "it was up to the INS whether [Movant] would be

15   deported."  (Respondents' Exh. 24)  The possibility of deportation was also referenced in the

16   plea agreement and mentioned by the Court during the change of plea and sentencing.

17   (Respondents' Exh. 16 at 44; Exh. 17 at 28)  Although the mere possibility of immigration

18   consequences of Movant's plea were discussed at the time of his plea, there is no dispute

19   that Petitioner was never advised that his plea agreement would result in mandatory

20   deportation.

21           In *Kwan*, 407 F.3d at 1013-1014, the Ninth Circuit concluded that petitioner had

22   provided a reasonable explanation for failing to challenge his conviction earlier - reliance on

23   his defense counsel's incorrect advice that there was little chance his conviction would cause

24   deportation. Defense counsel assured Kwan "that although there was technically a

25   possibility of deportation, 'it was not a serious possibility.'" *Id*. at 1008. Only after the INS

26   re-initiated removal proceedings against Kwan did he realize that his attorney had erred. *Id*.

27   at 1014. "Although it may have been more prudent of [petitioner] to collaterally attack his

28   conviction earlier, his course of action was reasonable. The law does not require [petitioner]

1    to challenge his conviction at the earliest opportunity, it only requires [petitioner] to have

2    sound reasons for not doing so." *Id.*

3         Respondents argue that, even if Movant had a reasonable explanation for failing to

4    challenge his conviction for several years after his conviction and sentencing, by the Spring

5    of 2002, he knew that his criminal conviction had negative immigration consequences.

6    (Doc. 10 at 7)  On April 17, 2002, while Movant was still on probation, he withdrew his first

7    application for naturalization. (Respondents' Exh. 19)  Movant asserts that, although he was

8    aware of immigration consequences concerning his ability to become a United States citizen,

9    he remained unaware of the deportation consequence of his federal conviction.

10        The Court finds that Movant has asserted a valid reason for not challenging his

11   conviction earlier - he was unaware of the immigration consequences - mandatory

12   deportation - of his guilty plea until November 2010 when the Government commenced

13   deportation proceedings. The Ninth Circuit has held, "[t]he law does not require [a

14   petitioner] to challenge his conviction at the earliest opportunity, it only requires [a

15   petitioner] have sound reasons for not doing so." *Kwan*, 407 F.3d at 1014. Moreover, the

16   decision which Movant cites in support of his claim that he suffered a fundamental error,

17   *Padilla v. Kentucky*, ___U.S.___, 130 S.Ct. 1473, was decided on March 31, 2010. Under

18   similar circumstances, the Ninth Circuit has held that a petitioner had asserted a valid reason

19   for not attacking his conviction earlier. *See Walgren*, 885 F.2d 1417,1420 (9th Cir. 1989)

20   (petitioner's reliance on recent Supreme Court opinion excused his delay in filing for *coram

21   nobis* relief).

22        The Government asserts that it is prejudiced by Movant's delay because, although

23   it has received the case file from the U.S. Department of Justice's Tax Division, the file does

24   not include the witnesses statements or copies of documentary evidence.  (Doc. 13 at 1[2])

25

_____

26        [2]  The Government initially asserted that the U.S. Attorney's Office had destroyed the
     case file relating to Movant's underlying criminal case. (Doc. 10 at 10-11)  The Government
27   filed a Supplement to its Response, advising the Court that it had received a copy of the criminal
     case file. (Doc. 13)
28

1  The file, however, does include "summary reports and internal memoranda related to the

2  investigation and prosecution of this case." (*Id.*)  Because the Court has found that Movant

3  was unaware of the deportation consequences of his guilty plea until November 2010, the

4  Court must determine whether the Government was prejudiced by the delay between

5  Movant's discovery of the adverse deportation consequences in November 2010 and filing

6  his Petition in March 2011. The Government does not address the issue of prejudice specific

7  to this time period.  It is unlikely that the Government's records regarding the criminal

8  proceeding would have been more complete in Fall of 2010 when Movant's deportation

9  proceedings began than in March 2011 when he filed the instant Petition.

10         The Government has failed to show significant prejudice as a result of Movant's

11  delay in challenging his conviction. Movant has asserted a valid reason for not doing so

12  earlier and, therefore, has satisfied the second prong of the *coram nobis* analysis and his

13  petition is not barred by laches.

14  **C.  Adverse Consequences**

15         Movant must next show that adverse consequences exist from the conviction to

16  satisfy the case or controversy requirement of Article III. Movant has been ordered deported

17  based on his conviction, which satisfies the third requirement for error *coram nobis* relief.

18  "It is undisputed that the possibility of deportation is an 'adverse consequence' of [a

19  petitioner's] conviction sufficient to satisfy Article III's case or controversy requirement."

20  *Kwan*, 407 F.3d at 1014. *See also Park v. California*, 202 F.3d 1146, 1148 (9th Cir. 2000)

21  (stating that "[b]ecause he faces deportation, [petitioner] suffers actual consequences from

22  his conviction.").

23  **D.  Fundamental Error**

24         A *coram nobis* petitioner may show fundamental error by establishing that he

25  received ineffective assistance of counsel. *Kwan*, 407 F.3d at 1014.  The relevant Supreme

26  Court law governing claims of ineffective assistance of counsel is *Strickland v. Washington*,

27  466 U.S. 668 (1984), which requires a showing of "both deficient performance by counsel

28  and prejudice." *Knowles v. Mirzayance*, 556 U. S.111, 123-24 (2009).  To prevail on a claim

1 of ineffective assistance of counsel, a petitioner must show that (1) counsel's representation

2 fell below an objective standard of reasonableness, and (2) the deficiencies in counsel's

3 performance prejudiced petitioner. *Strickland*, 466 U.S. at 687-688.  In *Hill v. Lockhart*, 474

4 U.S. 52 (1985), the Court held that *Strickland's* two-part analysis applies to claims of

5 ineffective assistance of counsel in the plea bargain context. In *Padilla*, 559 U.S.___, 130

6 S.Ct. 1473, 1485, the Court held that a guilty plea, based on a plea offer, should be set aside

7 because counsel misinformed the defendant of the immigration consequences of the

8 conviction. *Id*.  The case *sub judice* involves whether counsel provided "ineffective

9 assistance leading to acceptance of a plea offer."  *Missouri v. Frye*, ___ S.Ct.___, 2012 WL

10 932020, at * 6 (March 21, 2012) (discussing *Padilla*). Thus, the Supreme Court's decisions

11 in *Hill* and *Padilla* provide the framework for considering Movant's claims.

12        In *Padilla*, the Supreme Court clarified that "the negotiation of a plea bargain is a

13 critical phase of litigation for purposes of the Sixth Amendment right to effective assistance

14 of counsel." 559 U.S. at ___, 130 S.Ct. at 1486 (citing *Hill*, 474 U.S. at 57). In *Premo v.*

15 *Moore*, ___ U.S.___, 131 S.Ct. 733, 739–40 (2011), the Supreme Court recognized that

16 "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and

17 defense attorneys must make careful strategic choices in balancing opportunities and risks"

18 of a plea. *Id*. at 741. And, in two recent decisions, the Supreme Court held that criminal

19 defendants' Sixth Amendment right to effective assistance of counsel extends to plea

20 negotiations. *Missouri v. Frye*, ___ S.Ct.___, 2012 WL 932020 (March 21, 2012); *Lafler v.*

21 *Cooper*, ___S.Ct.___, 2012 WL 932019 (March 21, 2012). In *Frye*, the Court held the Sixth

22 Amendment right to effective assistance of counsel extends to consideration of plea offers

23 that lapse or are rejected. 2012 WL 932020, * 6-8.  The Court specifically held "that as a

24 general rule, defense counsel has the duty to communicate formal offers from the

25 prosecution to accept a plea on terms and conditions that may be favorable to the accused."

26 ___ S.Ct.___, 2012 WL 932020, at * 8. *Frye* also articulated a multi-part test for showing

27 prejudice where a plea offer has lapsed or been rejected because of counsel's deficient

28 performance. *Id*. at * 9-10 (finding that "[i]n order to complete a showing of *Strickland*

1  prejudice, defendants who have shown a reasonable probability they would have accepted

2  the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or

3  if the trial court had the discretion to refuse to accept it, there is a reasonable probability

4  neither the prosecution nor the trial court would have prevented the offer from being

5  accepted or implemented.").  In *Lafler*, the Court discussed the appropriate remedy when a

6  counsel's ineffective assistance "caused the rejection of a plea leading to a trial and a more

7  severe sentence." 2012 WL 932019, at * 10.

8          In *Frye*, the Court clarified that the "application of *Strickland* to instances of an

9  uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*." 2012 WL

10  932020, at * 9. Thus, as in this case, "where a defendant complains that ineffective assis-

11  tance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have

12  to show "a reasonable probability that, but for counsel's errors, he would not have pleaded

13  guilty and would have insisted on going to trial." *Id.* (citing *Hill*, 474 U.S. at 59).

14  **1.  Whether Defense Counsel's Performance was Deficient**

15          The Court will first consider whether defense counsel's performance was deficient

16  in this case. To be deficient, counsel's performance must fall "outside the wide range of

17  professionally competent assistance."  *Strickland*, 466 U.S. at 690. When reviewing

18  counsel's performance, the court engages a strong presumption that counsel rendered

19  adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment

20  of attorney performance requires that every effort be made to eliminate the distorting effects

21  of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

22  evaluate the conduct from counsel's perspective at the time." *Id.*, 466 U.S. at 689.

23          Movant argues that defense counsel's performance fell below an objective

24  standard of reasonableness because he failed to properly advise Movant of the immigration

25  consequences of his guilty plea. Movant cites *Padilla*, ___ U.S.___, 130 S.Ct. 1473 (2010),

26

27

28

1    in support of his claim.[3]  In *Padilla*, a defendant who pled guilty to drug-related charges

2    filed a motion for post-conviction relief, alleging that his attorney misadvised him about the

3    potential for deportation as a consequence of his guilty plea. *Id.* at 1478. The Supreme Court

4    stated that "[b]efore deciding whether to plead guilty, a defendant is entitled to the 'effective

5    assistance of counsel.'" *Id.* at 1480–1481 (quoting *McMann v. Richardson*, 397 U.S. 759,

6    771 (1970)). The Supreme Court held that defense counsel's performance was deficient

7    because he did not advise defendant that his guilty plea would result in automatic deporta-

8    tion. *Id.* at 1483. In *Padilla*, the Court noted that the provision directing "presumptively

9    mandatory" deportation based on drug conviction was "succinct, clear, and explicit." *Id.*

10   (citing 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been

11   convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a

12   State, the United States or a foreign country relating to a controlled substance . . . , other

13   than a single offense involving possession for one's own use of 30 grams or less of

14   marijuana, is deportable")). The Supreme Court found that "Padilla's counsel could have

15   *easily* determined that his plea would make him eligible for deportation simply from reading

16   the text of the statute, which addresses not some broad classification of crimes but specifi-

17   cally commands removal for all controlled substances convictions except for the most trivial

18   of marijuana possession offenses . . . The consequences of Padilla's plea could *easily* be

19

20   _____

21       [3] The parties do not dispute that, although it was not decided until 2010, *Padilla* applies
     to this case on collateral review. The Third Circuit is the only circuit court to have issued a

22   ruling on whether *Padilla* applies on collateral review.  In *United States v. Orocio*, 645 F.3d 630
     (3rd Cir. 2011), the Third Circuit concluded that "*Padilla* followed directly from *Strickland* and

23   long-established professional norms," and therefore held that "it is an 'old rule' for *Teague* [*v.
     Lane*, 489 U.S. 288 (1989)] purposes and is retroactively applicable on collateral review."  *Id.*

24   at * 7. Lower courts within the Ninth Circuit have reached the same conclusion.  *See United
     States v. Hurtado-Villa*, 2011 WL 4852284 (D.Ariz. August 12, 2011); *United States v.*

25   *Hubenig*, 2010 WL 2650625, *5 (E.D.Cal. July 1, 2010). *Hubenig* observed that the Supreme

26   Court issued three relatively recent opinions applying *Strickland* in various factual contexts, and
     none of those cases were deemed new rules. *Id.* at * 6 (citing *Rompilla v. Beard*, 545 U.S. 374

27   (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000)).

28

1    determined from reading the removal statute, his deportation was presumptively mandatory,

2    and his counsel's advice was incorrect." *Id.* (emphasis added).

3            The Court, however, further stated that:

4        [i]mmigration law can be complex, it is a legal specialty of its own. . . There will,
     therefore, undoubtedly be numerous situations in which the deportation

5    consequences of a particular plea are unclear or uncertain.  The duty of the private
     practitioner in such cases is more limited. When the law is not succinct and

6    straightforward (as it is in many of the scenarios posited by Justice Alito), a
     criminal defense attorney need do no more than advise a noncitizen client that

7    pending criminal charges may carry a risk of adverse immigration consequences.
     But when the deportation consequence is truly clear, as it was in this case, the duty

8    to give correct advice is equally clear.

9    *Id.* at 1483 (emphasis added).

10           In his concurring opinion, Justice Alito noted that "providing advice on whether a

11   conviction for a particular offense will make an alien removable is often quite complex." *Id.*

12   1488. Justice Alito explained that:

13       Most crimes affecting immigration status are not specifically mentioned by
     the [Immigration and Nationality Act (INA)], but instead fall under a broad

14   category of crimes, such as *crimes involving moral turpitude* or *aggravated
     felonies.*" M. Garcia & L. Eig, CRS Report for Congress, Immigration

15   Consequences of Criminal Activity (Sept. 20, 2006) (summary) (emphasis in
     original). As has been widely acknowledged, determining whether a particular

16   crime is an "aggravated felony" or a "crime involving moral turpitude. . ." is not an
     easy task. *See* R. McWhirter, ABA, *The Criminal Lawyer's Guide to

17   Immigration Law: Questions and Answers* 128 (2d ed. 2006) . . .("Because of the
     increased complexity of aggravated felony law, this edition devotes a new

18   [30–page] chapter to the subject"); *id.*, § 5.2, at 146 (stating that the aggravated
     felony list at 8 U.S.C. § 1101(a)(43) is not clear with respect to several of the listed

19   categories . . . .

20   *Id.* at 1488.

21           Here, Movant pleaded guilty to fraud, in violation of 18 U.S.C. § 286, which

22   resulted in a loss of $95,121.00. (doc. 1, Movant's Exh. 1)  The Government argues that, at

23   the time of Movant's guilty plea in 1997 and sentencing in 1999, the immigration

24   consequences of his plea could not *easily* have been determined from reading the removal

25   statute. Title 8 U.S.C. § 1227(a)(2)(A)(iii) states that an alien may be removed from the

26   United States if he has been convicted of an aggravated felony. Title 8 U.S.C. § 1101(a)

27   (43)(M)(i) provides that "an offense that - involves fraud or deceit in which the loss to the

28   victim or victims exceeds $10,000" is an aggravated felony. The Government argues that it

1  was unclear whether Movant's conviction for fraud under 18 U.S.C. § 286 would be

2  considered an "aggravated felony" because the loss amount was not an element of the

3  offense.  *See* 8 U.S.C. § 1101(a)(43)(M)(i) (defining aggravated felony to include fraud

4  offenses "in which the loss to the victim or victims exceeds $10,000."); 18 U.S.C. § 286.

5  Respondents cite case law discussing the "*Taylor* categorical approach" and "modified

6  categorical approach" to determining whether the loss to the victim of a fraud offense

7  exceeds $10,000.  *See Taylor v. United States*, 495 U.S. 575 (1990). Under the *Taylor*

8  categorical approach, the court looks "only to the fact of conviction and the statutory

9  definition" of the offense." *Li v. Ashcroft*, 389 F.3d 892, 896 (9th Cir. 2004)  Thus, the

10  elements of the offense of conviction must require proof of monetary loss in excess of

11  $10,000. "If the statutory crime of conviction is broader than the generic crime - here an

12  offense that involves fraud resulting in a loss to the victim in excess of $10,000 - the court

13  applies the modified categorical approach." *Id*., at 896-87.

14  Under the modified categorical approach, the court "'determines if the record

15  unequivocally establishes that the defendant was convicted of the generically defined

16  crime.'" *Id*. (quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002)

17  (*en banc*)). In other words, the court looks "to certain documents in the record of conviction,

18  [including a plea agreement], to determine whether [defendant's fraud] conviction satisfies

19  the $10,000 loss requirement of § 1101(a)(43)(M)(i)." *Chang v. INS*, 307 F.3d 1185, 1189-

20  90 (9th Cir. 2002), *implied overruling recognized by Kawashima v. Mukasey*, 530 F.3d 1111

21  (9th Cir. 2008).

22  The Government asserts that the law on this issue remained unclear until 2009,

23  when the Supreme Court decided *Nijhawan v. Holder*, 557 U.S. 29, 129 S.Ct. 2294, 2302

24  (2009). In *Nijhawan*, the Supreme Court clarified that Section 1101(a)(43)(M)(i)'s

25  "monetary threshold applies to the specific circumstances surrounding an offender's

26  commission of a fraud and deceit crime on a specific occasion" rather than the elements of

27  the offense, adopting the modified categorical approach. The Government suggests that,

28  before *Nijhawan*, it was unclear in the Ninth Circuit whether the court should apply the

"*Taylor* categorical approach" or the "modified categorical approach" to determine whether a conviction was an aggravated felony.

Contrary to the Government's characterization, at the time of Movant's conviction, the Ninth Circuit, used a "two-step categorical approach," to determine whether a fraud conviction satisfied the monetary threshold in Section 1101(a)(43)(M)(i), and considered both the "*Taylor* categorical approach" and the modified categorical approach. *See Li,* 389 F.3d at 896-87; *United States v. Parker*, 5 F.3d 1322 (9th Cir. 1993) (applying the modified categorical approach to determine whether a jury found the defendant guilty of generic burglary even though the statute under which the defendant was convicted did not require unlawful entry, a necessary element of the generic definition).

The Government also does not cite any Ninth Circuit case law interpreting section 1101(a)(43)(M)(i) that would have provided the backdrop for defense counsel's advice in this case at the time of Movant's guilty plea. Although, as Justice Alito noted in *Padilla*, determining whether a particular crime is an "aggravated felony" for purposes of 8 U.S.C. § 1101(a)(43)(M)(i) "is not an easy task," *Padilla*, 130 S.Ct. at 1488, Movant's counsel did not even consider the application of § 1101(a)(43)(M)(i) to Movant's case. Thus, defense counsel had no occasion to consider any of the alleged complexities surrounding the deter-mination of whether Movant's fraud conviction would constitute an aggravated felony. This error rendered counsel's performance deficient under the first prong of *Strickland*. Because Movant plead guilty to a fraud resulting in a loss well in excess of $10,000 - the plea agreement specifically provided that the amount of loss was $95,121.00 - the crime was an aggravated felony and Movant's deportation was mandatory. *See* 8 U.S.C. § 1227(a)(2)(A) (iii) and 8 U.S.C. § 1101(a)(43)(M)(i).

Defense counsel, Jose de la Vara, attests that he knew Movant "was a Mexican citizen with lawful immigration status in the United States, and that his main concern was . . . remain[ing] in the United States with his family." (Respondents' Exh. 24)  Defense counsel states that, at the time of Movant's guilty plea and conviction, he did believe that Movant's guilty plea "would necessarily result in deportation," but does "not recall discussing with

[Movant] whether the criminal conviction could be classified as an aggravated felony." (*Id.*) Rather, defense counsel recognized "that crime could have immigration consequences" and "that it could be classified as a crime involving moral turpitude." (*Id*) Counsel told Movant he could not guarantee what the INA would do regarding deportation. (*Id.*) Counsel "did not promise [Movant] that he would not be deported, nor did [counsel] tell him that his conviction would result in automatic deportation." (*Id.*)

Movant pleaded guilty under counsel's mistaken advice that Movant had a chance of remaining in the United States if the trial court accepted the recommendation in the plea agreement that it "recommend to the Immigration and Naturalization Service that defendant not be deported from the United States of America for his involvement in the instant criminal activity." (Doc. 1, Exh. 1) Counsel erroneously believed that Petitioner's conviction would have been considered a crime of moral turpitude, for which Petitioner would not have been subject to automatic deportation and could have been eligible for cancellation of removal or the judicial recommendation against deportation procedure ("JRAD") codified at 8 U.S.C. § 1251(b) (1994 ed.). In the past, federal courts had the authority to prohibit the INS from deporting an alien through a judicial recommendation against deportation ("JRAD"). *Padilla*, 130 S.Ct. at 1479-80. The statute provided:

> That the provision of this section respecting the deportation of aliens convicted of a *crime involving moral turpitude* shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, . . . make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this Act." 1917 Act, 39 Stat. 889–890.

*Padilla*, 130 S.Ct. at 1479 n. 3. In 1990, the JRAD procedure was eliminated. *Id*. at 1480. However, the court could make a non-binding recommendation against removal in cases involving moral turpitude. *Id.*, at 1480 n. 5 (stating that the JRAD procedure, codified in 8 U.S.C. § 1251(b) (1994 ed.), applied only to the "provisions of subsection (a)(4)," the crimes-of-moral-turpitude provision.). Because Movant's conviction was an aggravated felony, this procedure did not apply to him.

Under *Padilla* and *Kwan*, Movant should have been advised of the mandatory

- 16 -

immigration consequences of his guilty plea. Defense counsel did not even recognize that Movant's conviction could be considered an aggravated felony. Rather he admits that he believed that conviction would have been considered a crime of moral turpitude for which the judicial recommendation procedure, codified in 8 U.S.C. § 1251(b), may have applied. Defense counsel's performance was deficient for failing to research the relevant immigration law and failing to provide Movant accurate advice regarding the immigration consequences of his guilty plea - mandatory deportation. Having found defense counsel's performance deficient, the Court proceeds to *Strickland's* prejudice prong.

**2.   Whether Counsel's Deficient Performance Prejudiced Petitioner**

To establish prejudice under *Strickland*, Movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "In the context of a plea, a petitioner satisfies the prejudice prong of the *Strickland* test where 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Smith v. Mahoney*, 611 F.3d 978, 985 (9th Cir. 2010) (quoting *Hill*, 474 U.S. at 59). Movant asserts that he was prejudiced because he would not have pleaded guilty if he had known the actual immigration consequences of his plea.

In this case, Movant had two choices. First, pleading guilty and facing mandatory deportation. Second, proceeding to trial, with the possibility of being deported if found guilty. If Movant had not pleaded guilty, it is possible he might have been convicted and deported. However, Movant attests that if he had known that pleading guilty would result in mandatory deportation, he would have proceeded to trial. (Doc. 1, Exh. 3)  In *Padilla*, the Supreme Court compared deportation to "banishment or exile." *Padilla*, 130 S.Ct. at 1486 (citation omitted). As the Eastern District of California succinctly stated, "[f]aced with the choice between certain deportation and the possibility of escaping deportation, it is reasonable to accept [Movant's] assertion that he would not have pled guilty and would have insisted on going to trial." *United States v. Krboyan*, 2011 WL 2117023, at * 13 (E.D.Cal.

May 27, 2011) (granting writ of error *coram nobis* after finding defense counsel was ineffective for failing to properly advise petitioner his guilty pleas would subject him to automatic deportation as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(M)(i)). The Court finds that Movant was prejudiced by counsel's deficient performance because, had Movant been advised that his plea would subject him to mandatory deportation, he would have proceeded to trial.

**IV. Conclusion**

Based on the foregoing, the Court finds that Movant is entitled to error *coram nobis* relief.

Accordingly,

**IT IS RECOMMENDED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, construed as a request for writ of error *coram nobis*, doc. 1, be **GRANTED** and Movant be retried within sixty (60) days of an order adopting this Report and Recommendation.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **GRANTED** because the issues are "debatable among jurists of reason," or "the questions are adequate to deserve encouragement to proceed further." *Mendez v. Knowles*, 556 F.3d 757, 770–71 (9th Cir. 2009) (quoting *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2)).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance by the district court without further review. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed.R.Civ.P. 72.

DATED this 28th day of March, 2012.

Lawrence O. Anderson
United States Magistrate Judge