1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                        **FOR THE DISTRICT OF ARIZONA**
8
9    Matias Velazquez,                       No. CV-11-00820-PHX-RCB
10                        Petitioner,          **ORDER**
11   v.
12   United States of America,
13                        Respondent.
14
15          Currently pending before the court is the Amended Report and Recommendation
16   of the United States Magistrate Judge Lawrence O. Anderson ("R & R") (Doc. 18),
17   "find[ing] that petitioner [Matias Velazquez] is entitled to error *coram nobis* relief." R &
18   R (Doc. 18) at 18:8-9.   Timely objections were filed by the respondent, the United States
19   of America  (Doc. 19).   The petitioner did not file a response to those objections as the R
20   & R permitted, however.   <u>See</u>  R & R (Doc. 18) at 18:25-26.  For the reasons set forth
21   herein, the court rejects the recommendations, and denies the petitioner's "Motion to
22   Vacate Plea of Guilty & Set Aside Judgement [sic]/Motion for Expungement" ("Mot.")
23   (Doc. 1).

                                    ***<u>Background</u>***
24   ***<u>I.  Factual & Procedural</u>***
25          ***<u>A.  Criminal Proceedings</u>***
26          On August 15, 1997, represented by criminal defense attorney Jose de la Vara, the
27   petitioner pled guilty in this federal district court to a one count information charging him
28

with conspiracy to defraud the United States in violation of 18 U.S.C. § 286.[1]  Response to Defendant's Motion to Vacate Plea of Guilty and to Defendant's Motion for Expungement ("Resp."), exh. 11 thereto  (Doc. 10-1) at 2-5: and exh. 16 thereto (Doc. 10-1) at 17-24.   Among other things, while managing a tax preparation business, as part of a rapid return program, the petitioner knowingly prepared and filed false federal income tax forms, claiming an Earned Income Credit for non-qualifying clients.  Id. at 3-4; see also Mot. (Doc. 1), exh. 1 thereto (Doc. 1-1) at 13-14, ¶¶ 1-2.  This program generated fees for not only the tax business, but also a bonus for petitioner for each rapid refund return prepared by his office.   Id.  at  3; see also Mot. (Doc. 1), exh. 1 thereto (Doc. 1-1) at 14, ¶ 3.

In the plea agreement,  which the parties "approv[ed] and accept[ed]" on August 15, 1997, of the total tax loss of $285,180.00, the parties stipulated to a "total loss attributable to" the petitioner of "$95,121.00." Mot. (Doc. 1), exh. 1 (Doc. 1-1) thereto at 15:14 (emphasis omitted); and at  9:13-16, ¶ 3(g).   Recognizing that it was "fully within the Court's discretion whether it follow[ed] this recommendation, as part of that plea agreement, the United States agreed to "ask the Court to recommend to the Immigration and Naturalization Service ("INS") that the [petitioner] not be deported . . .  for his involvement" in the criminal activity to which he pled guilty.  Id.  at 9-10, ¶ 3(h)(2).

During the August 15, 1997, waiver and change of plea hearing, in response to the court's explicit inquiry as to whether the petitioner understood that it was within the court's discretion whether or not to follow the United States' recommendation that he not be deported, he responded, "Yes."  See Resp. (Doc. 10), exh. 16 thereto (Doc. 10-1)  at

---

[1]     In its entirety, that statute reads as follows:

> Whoever enters into any agreement, combination, or conspiracy
> to defraud the United States, or any department or agency thereof,
> by obtaining or aiding to obtain the payment or allowance of any false,
> fictitious or fraudulent claim, shall be fined under this title or imprisoned
> not more than ten years, or both.

18 U.S.C. § 286.

18.   At that time, the petitioner also confirmed the accuracy of the factual basis for his plea.  Id. at 47-48.    Prior to pleading guilty, the court inquired as to whether the petitioner had any questions of the court, his lawyer, or the Government's lawyer; he did not.  Id. at 48.  The petitioner then plead guilty "because [he] [was] guilty[.]"  Id. at 49.

At his June 14, 1999,  sentencing, where the petitioner was again represented by counsel, after granting a "substantial" downward departure, this court sentenced the petitioner to four years of probation.  Id., exh. 17 thereto (Doc. 10-1) at 27:13; 27:18-19.  As a "special condition of probation, the court ordered that "if deported, the [petitioner] shall not reenter the United States without legal authorization and the permission of this court."    Id. at 30:16-18.  The court "elected to decline to make the recommendation without prejudice[,] . . . mean[ing] that if inquiry is made, the Court may reconsider its determination when it makes such recommendation."  Id.  at 32:9-12.

To support his motion, the petitioner filed a terse affidavit, wherein he avers that:

> 1.  [He] read the Motion . . . and agree[s] with its factual contents.
>
> 2.  When [he] entered into [his] plea agreement . . . , [he] was not aware that this type of conviction would have precluded [him] from remain[ing] in the United States with his family.
>
> 3.  [H]ad [he] known that this conviction would result in automatic deportation, [he] most likely would have tried to work out a different plea agreement with the government, which would not have resulted in [his] deportation, or, [he] would have taken the matter to trial."

Mot. (Doc. 1), exh. 3 thereto (Doc. 1-3) at 2:14-22, ¶ ¶ 1-3.

The United States' response includes a declaration from the petitioner's attorney, more fully discussed herein, outlining his representation of the petitioner from the time of initial appearance through his sentencing.  Suffice it to say for now that attorney de la Vara did not "tell [the petitioner] that his conviction would result in automatic deportation."  Resp. (Doc. 10), exh. 24 thereto (Doc. 10-1)  at 68, ¶ 6.

### *B.  Immigration Proceedings*

- 3 -

1    The petitioner is a native and citizen of Mexico who has been a lawful permanent

2    resident, but not a citizen or a national, of the United States either since November 21,

3    1989, or December 27, 1989.  Id., exh. 18 thereto (Doc. 10-1) at 37; exh. 22 thereto (Doc.

4    10-1) at 60.   On January 17, 1996,  prior to his guilty plea, the petitioner completed an

5    Application for Naturalization, with the assistance of a non-attorney representative from

6    Chicanos Por La Causa.  Id., exh. 18 thereto (Doc. 10-1) at 40.  After determining that his

7    federal guilty plea rendered him "ineligible" to apply for naturalization, on April 17,

8    2002, the petitioner formally withdrew that Application.  Id.,  exh. 19 thereto (Doc. 10-1)

9    at 43.

10    On August 8, 2007, four years after the completion of his probation sentence, the

11    petitioner filed a second Application for Naturalization, with the assistance from

12    American Beginnings, a Yuma, Arizona organization.  Id. exh. 20 (Doc. 10-1) thereto at

13    55.  At his September 10, 2008, interview for that Application,  the petitioner disclosed

14    his fraud conviction and probation sentence.  Id. at 52 and 54.  Given his June 14, 1999,

15    sentencing, "it was found" that the petitioner "was convicted of an aggravated felony[, ]"

16    and was thus be "removable from the United States."    Id. exh. 21 (Doc. 10-1) thereto at

17    57-58.   On November 2, 2010, petitioner's second Application for Naturalization was

18    denied.  Id., exh. 20 (Doc.10-1) thereto at 45.

19    Thereafter, on November 8, 2010, given his prior conviction, the Department of

20    Homeland Security served upon the petitioner, by regular mail, a Notice to Appear on an

21    undetermined date and time for removal proceedings.  Id., exh. 22 (Doc. 10-1) thereto at

22    60-61.  The basis for removal, according to that Notice was:

23        petitioner's "convict[ion] of an aggravated felony as
       defined in section 101(a)(43)(M) of the Act, a law relating to
24       an offense that (i) involves fraud or deceit in which the loss to the
       victim or victims exceeds $10,000; or (ii) is described in The
25       Internal Revenue Code of 1986, Section 7201 (relating to tax evasion) in
       which this revenue loss to the Government exceeds $10,000.
26

27    Id. at 62.   By letter of the same date, the INS advised the petitioner of the denial of his

28    second  Application for Naturalization, and further advised him that he had been placed

in removal proceedings.  Id., exh. 23 thereto (Doc. 10-1) at 64-66.

### C.  Petitioner's Motion

Prior to the petitioner's placement in removal proceedings, on March 31, 2010, in Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the Supreme Court held "that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea."  Chaidez v. United States, --- U.S. ----, 133 S.Ct. 1103, 1105, 185 L.Ed.2d 149 (2013).  Almost 12 years after his sentencing, nearly eight years after the completion of his probation, and exactly one year after Padilla, on March 31, 2011, the petitioner filed the present motion. In moving to vacate his guilty plea, the petitioner claims that he was not properly advised of the serious immigration consequences of his guilty.  In particular, heavily relying upon Padilla, the petitioner contends that he should have been advised that his guilty plea would result in "presumptive[], or, virtually mandated deportation[.]"  Mot. (Doc. 1) at 5:17.  In light of the foregoing, the petitioner argued that his guilty plea did not:  (1) comply with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), because the record does not "affirmatively show" that his "plea was intelligent and voluntary[,]" Murtishaw v. Woodford, 255 F.3d 925, 958 (9th Cir. 2001) (citation omitted); and (2) did not comport with Fed.R.Crim.Proc. 11 because it was not knowing, voluntary, and intelligent.  The third basis for the petitioner's motion is an ineffective assistance of counsel claim against attorney de la Vara under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Padilla, and United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005), abrogated on other grounds by Padilla, 130 S.Ct. 1473.  Alternatively, the petitioner requested expungement of  his criminal record

The United States' first responds that the petitioner is not entitled to relief under 28 U.S.C. §  2255 because he is no longer in custody.  Next, arguing that he has not provided any authority for so doing, the United States challenged the petitioner's request for expungement.  Then, construing the petitioner's motion as seeking coram nobis relief, the United States contended that such relief is not available because he did not show valid reasons for delay in seeking such relief in that he "knew from the very beginning that the

criminal conviction could have immigration consequences." Resp. (Doc. 10) at 7:22-23 (citation omitted). Further, the United States contended that the petitioner did not show "error of the most fundamental character[]" because his counsel did provide effective assistance by "recogniz[ing] that the conviction could create problems for   [the petitioner], [and] . . . d[oing] his best to mitigate those consequences[.]" Id. at 9:24-25 (internal quotation marks and citation omitted). In making this argument, the United States asserts that the petitioner's counsel's "actions were reasonable" because at the time the immigration consequences of the petitioner's guilty plea "were unclear[]" because "it was an open question whether his crime could be classified as an 'aggravated felony' for deportation purposes because the loss amount was not an element of the offense." Id. at 9:19 and 9:4-6 (citations omitted).

Additionally, the petitioner's ineffective assistance of counsel claim is not viable, the  United States contends, because he did not show prejudice, the second prong of such a claim.   Lastly, the United States argues that  laches bars the petitioner's claim  for coram nobis relief because it is prejudiced due to the delay such relief  given that it does not have "witness statements or copies of the documentary evidence[.]"  See Supplement to Government's Response to Defendant's Motion (Doc. 13) at 1:25-26.

Conceding the inapplicability of section 2255 relief, the petitioner   nonetheless asserts that his motion was timely because the relevant time did "not start to run . . . at least until after" the March 31, 2010,  Padilla decision.  See Reply (Doc. 16) at 2:11-12. As to the expungement issue, the petitioner also concedes that his cited authority is not directly on point, but persists in arguing that "federal courts have the equitable power and thus the ability to expunge criminal convictions when justice requires."  Id. at 2:17-18. Addressing his purported delay in filing this motion, the petitioner retorts that the relevant time frame is not when he became aware of the general "'immigration consequences'" of his guilty plea, but rather, when he became aware of "automatic deportation[,]" which came much later.  Id. at 3:10-11.  Further, contrary to what the Government asserts, the petitioner maintains that when he pled guilty, it was settled that the crime to which he pled was an aggravated felony, which would result in automatic

deportation.

## II.  Report & Recommendation

At the outset, agreeing with the United States, the Magistrate Judge found that because the petitioner is no longer in custody,  he is not entitled to § 2255 relief.  R & R (Doc. 18) at 4:25-5:5.   The Magistrate Judge thus went on to consider whether the petitioner may be entitled to coram nobis relief.  In so doing, the Magistrate Judge did not consider, or even mention, the petitioner's arguments based upon Boykin, 395 U.S. 238, and Fed.R.Crim.Proc. 11

In recommending the granting of coram nobis relief,  the first issue was whether the petitioner "asserted a valid reason" for not earlier seeking such relief.  R & R (Doc. 18) at 9:11.  Although "the mere possibility of immigration consequences . . . w[as] discussed at the time of his plea," the Magistrate Judge found that the petitioner had a valid reason for the delay in filing his motion because "there is no dispute [he] was never advised that his plea agreement would result in mandatory deportation."  Id. at 7:17-20.  Additionally, in finding that the petitioner had a valid reason for delay, the Magistrate Judge noted that Padilla, 130 S.Ct. 1473, the primary basis for petitioner's motion, was decided on March 31, 2010,  only a year prior to the filing this motion.

The Magistrate Judge discounted the United States' argument that it sustained prejudice due to the petitioner's delay in filing this motion.  Pointedly noting that the Government did not address the issue of any claimed prejudice between November 2010, when the petitioner asserts he first learned that his guilty plea would result in automatic deportation, and March 2011 when he filed this motion, the Magistrate Judge found it "unlikely that the Government's records regarding the criminal" prosecution would have been more complete in the fall of 2010 than they were in March 2011.  R & R (Doc. 18) at 9:7.

Preliminarily, relying upon United States v. Orocio, 645 F.3d 630 (3rd  Cir. 2011),[2]

---

[2]   The Magistrate Judge was operating under the mistaken assumption that at the time, "[t]he Third Circuit [wa]s the only circuit court to have issued on ruling on whether Padilla applies on collateral review."  R & R (Doc. 18) at 12:21-22, n. 3  (emphasis added).  Actually, at that time, at least

as well as lower courts within this Circuit, and because the parties did not dispute the retroactivity of <u>Padilla</u>, the Magistrate Judge applied <u>Padilla</u> retroactively.   <u>See id.</u> at 12:21-28, n. 3.   Ultimately, the Magistrate Judge found that defense counsel's performance was "deficient" because  "[u]nder <u>Padilla</u> and <u>Kwan</u>, Petitioner should have been advised of the mandatory immigration consequences of his guilty plea." <u>Id.</u> at 17:8; and 16:28-17:1.   Continuing with his analysis of the ineffective assistance of counsel claim, the Magistrate Judge found that the petitioner "was prejudiced by counsel's deficient performance because, had [he] been advised that his plea would subject him to mandatory deportation, he would have proceeded to trial." <u>Id.</u> at 18:4-6.   Concluding, the Magistrate Judge recommended granting coram nobis relief to the petitioner and that he be "retried within sixty (60) days of an order adopting this [ R & R]." <u>Id.</u> at 18:13-14. The Magistrate Judge further recommended granting a certificate of appealability. However, because he recommended granting coram nobis relief, the Magistrate Judge did not address the petitioner's alternative argument requesting expungement of his criminal record.

### III.  Objections

Maintaining that the petitioner has not demonstrated:  (1) "valid reasons for [the] delay" in filing his writ of coram nobis; (2) "defective representation" by his counsel; nor (3)  "prejudice[,]" the United States is seeking de novo review of the R & R's contrary legal conclusions.  <u>See</u> Objection to R & R ("Obj.") (Doc. 19) at 1:18.   Additionally, the United States objects to certain factual findings in the R & R.   There is no need to delve into each of those objections at this juncture, because, as will be seen, there has been an intervening change in law which significantly alters the analysis herein, and, for the most part, renders these objections unnecessary.

As mentioned earlier, the Magistrate Judge did not consider the petitioner's arguments that his guilty plea violated <u>Boykin</u>, 395 U.S. 238, and Fed.R.Crim.Proc. 11. By the same token though, the petitioner did not file any objections to the R & R,

two other Circuit Courts had held to the contrary:  <u>Padilla</u> does not apply retroactively.  <u>Chaidez v. United States</u>, 655 F.3d 684 (7th Cir. 2011); and <u>United States v. Chang Hong</u>, 671 F.3d 1147 (10th Cir. 2011).

although he was entitled to do so.  Therefore, he is deemed to have abandoned those arguments and there is no need to consider them.  See Green v. City of New York, 2010 WL 148128, at *13 (E.D.N.Y.) (defendants "essentially abandoned" arguments by failing to object when the Magistrate Judge did not address those arguments in the R & R), aff'd on other grounds without pub'd opinion, 403 Fed.Appx. 626 (2nd Cir. 2010).

### IV. Chaidez v. United States

After the filing of the R & R and the United States' objections thereto, the Supreme Court rendered its decision in Chaidez, 133 S.Ct. 1103.  Applying the retroactivity principles of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and finding that Padilla "announced a 'new rule[,]'" the Supreme Court unequivocally held that "Padilla does not have retroactive effect."  Chaidez, 133 S.Ct. at 1105.  In so holding, Chaidez abrogated Orocio, 645 F.3d 630, which was the primary basis for the Magistrate Judge's decision to apply Padilla retroactively in this case.  In any event, after Chaidez there is no doubt that "defendants whose convictions became final prior to Padilla cannot benefit its holding."  Chaidez, 133 S.Ct. at 1113.

"Because it appear[ed] that the [petitioner's] conviction . . . was final before the Supreme Court's decision in Padilla, and because Padilla is the primary basis for the [petitioner's] request for relief[,]" this court ordered the filing of supplemental briefs on the issue of "the impact of" Chaidez, 133 S.Ct. 1103, "if any" upon the R & R and the United States' objections thereto. Ord. (Doc. 20) at 5:5-8.

From the petitioner's viewpoint, although Chaidez "affects some" of the Magistrate Judge's analysis, it does not "change the recommended relief."  Memorandum of Law Re:  Chaidez v. United States (Doc. 21) at 2:4-5 (emphasis omitted).      That is because, Padilla aside, the petitioner maintains that the Ninth Circuit's decision in Kwan, 407 F.3d 1005  "provides the necessary legal authority" to grant him coram nobis relief. Id. at 1:10-11 (emphasis omitted).  The Government counters that to the extent that the R & R relied upon Padilla to conclude that defense counsel's performance was deficient, those portions "must . . . be rejected in light of Chaidez."  Government's Response to Defendant's Memorandum of law Re:  Chaidez v. United States ("Gov.'s Resp.") (Doc.

22) at 1:23 (citation omitted).[3]  Admitting that it had not previously raised the issue of whether or not <u>Kwan</u> should be applied retroactively,[4] the Government asserts that like <u>Chaidez</u>, 133 S.Ct. 1103, the 2005 <u>Kwan</u> decision "announced a new rule[.]"  <u>Id.</u> at 1:26-27.  Therefore, the Government strongly suggests that that the petitioner cannot rely upon <u>Kwan</u> to collaterally attack his plea agreement.   To the contrary, the petitioner contends that <u>Kwan</u> did not establish "any new law[,]" but simply "reiterated and recognized"  that "affirmative misrepresentation regarding immigration consequences was considered as ineffective assistance of counsel."   Reply (Doc. 23) at   2:11; and 2:21-22 (citation omitted).

### ***Discussion***

### *I.  Standard of Review*

The Federal Magistrate Judge Act  "distinguishes between nondispositive matters under 28 U.S.C. § 636(b)(1)(A) and dispositive matters heard pursuant to 28 U.S.C. § 636(b)(1)(B)" with respect to, *inter alia*, the standard of review.  See <u>United States v. Abonce–Barrera</u>, 257 F.3d 959, 968 (9th Cir. 2001).  "Generally, non-dispositive motions are subject to review under the clearly erroneous or contrary to law standard, 28 U.S.C. § 636(b)(1)(A); and Fed.R.Civ.P. 72(a),  whereas dispositive motions are subject to *de novo* review. 28 U.S.C. § 636(b)(1); and Fed.R.Civ.P. 72(b)(3)."  <u>Gamez v. Ryan</u>, 2013 WL 1897132, at *3 (D.Ariz. 2013).  "Dispositive matters specifically embraced by [28 U.S.C.] § 636(b)(1)(B) include 'applications for posttrial relief made by individuals convicted of criminal offenses[,]'" such as petitioner Velazquez.  See <u>Magee v. Rowland</u>, 764 F.Supp. 1375, 1376 (C.D.Cal. 1991) (quoting 28 U.S.C. § 636(b)(1)(B)).  Thus, the governing standard of review here is *de novo*.

Under that standard,  "'[a]lthough a de novo hearing is not necessary, the district court must arrive at its own independent conclusion about those portions of the

---

[3]      The court observes that the Government cited to portions of the original R & R, which was amended; but, it is the amended R & R, not the original, which is the subject of this order.

[4]      Notably, the petitioner did not "formally object[]" to the United States raising the issue of <u>Kwan</u>'s retroactivity at this point.  Reply (Doc. 23) at 2:28, n. 1.

magistrate judge's findings or recommendations to which a party objects.'" United States v. Soto-Valdez, 2013 WL 5297142, at *3 (D.Ariz. 2013) (quoting Olson v. Lemos, 2008 WL 782724, at *1 (E.D.Cal. 2008) (citing, in turn, United States v. Remsing, 874 F.2d 614, 616 (9th Cir. 1989)); see also Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.")   Consequently, "this 'reviewing court [is] not defer[ring] to the'" recommendation to grant the petitioner's request for a writ of coram nobis,  but instead is "'freely consider[ing] the matter anew, as if no decision had been rendered below.'"   Id. (quoting Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir .2009) (internal quotations and citation omitted) (emphasis omitted)).   Engaging in de novo review makes eminent sense for the additional reason that Chaidez, 133 S.Ct. 1103, changed the legal landscape with respect to Padilla, a case which was at the core of the recommendation that petitioner be granted coram nobis relief.

## II.  Writ of Coram Nobis

### A.  Legal Standards

"The writ of error coram nobis[5] affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody."  Estate of McKinney v. United States, 71 F.3d 779, 781 (9th Cir. 1995) (citation omitted) (footnote added). "Specifically, the writ provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors."  Id. (citations and quotation marks omitted).  A court's authority to issue a writ of error coram nobis derives from the All Writs Act, 28 U.S.C. §  1651(a).

---

[5]      Coram nobis, literally, means "[b]efore us[]" and "refers to the sovereign[.]" *Black's Law Dictionary* (9th ed. 2009).   Historically, the writ of coram nobis refers to "[a] writ of error taken from a judgment of the King's Bench."   Id.   That writ "is an ancient common-law remedy designed 'to correct errors of fact.'"   United States v. Denedo, 556 U.S. 904, 910, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009) (quoting United States v. Morgan, 346 U.S. 502, 507, 74 S.Ct. 247, 98 L.Ed. 248 (1954)).  As will be seen, however, "in its modern iteration *coram nobis* is broader than its common-law predecessor."  Id. at 911.

1   Matus-Leva v. United States,  287 F.3d 758, 760 (9th Cir. 2002).

2        "Both the Supreme Court and [the Ninth Circuit] have long made clear that the

3   writ of error coram nobis is a highly unusual remedy, available only to correct grave

4   injustices in a narrow range of cases where no more conventional remedy is applicable."

5   United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir. 2007).  "[C]haracteriz[ing] the writs

6   as an 'extraordinary remedy[.]'" according to the Supreme Court, they "should be granted

7   'only under circumstances compelling such action to achieve justice.'"  Id.  (quoting

8   United States v. Morgan, 346 U.S. 502, 52274 S.Ct. 247, 98 L.Ed.2d 248 (1954)).

9   Similarly "describ[ing]  the writs as extraordinary," in the Ninth Circuit's view, they

10  should be "used only to review errors of the most fundamental character, . . . and fill[ing]

11  a very precise gap in federal criminal procedure."  Id. (internal quotation marks and

12  citations omitted).

13       Since 1987, the Ninth Circuit has employed the same four element framework for

14  deciding whether to grant the writ of error coram nobis:

15
16              [A] petitioner must show the following to qualify for
                coram nobis relief: (1) a more usual remedy is not
17              available; (2) valid reasons exist for not attacking the
                conviction earlier; (3) adverse consequences exist
18              from the conviction sufficient to satisfy the case or
                controversy requirement of Article III; and (4) the
19              error is of the most fundamental character.
20

21  Id. (quoting  Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987)).   "Because

22  these requirements are conjunctive, failure to meet any one of them is fatal."  Matus-

23  Leva,  287 F.3d at 760  (citation omitted).   Only the second and fourth elements are in

24  dispute here.

25       **_B.  More Unusual Remedy Not Available & Adverse Consequences_**

26       The first and third Hirabayashi elements require no discussion.  The United States

27  conceded the existence of both.  Resp. (Doc. 10) at  6:24-26.  The Magistrate Judge found

28  that the petitioner satisfied both.  R & R (Doc. 18) at 6:13-19; and 9:15-22.  And, there

are no objections to those findings.   In sharp contrast, however, the parties vigorously dispute whether the petitioner has satisfied the second and fourth <u>Hirabayashi</u> elements - - the existence of "valid reasons for not attacking the conviction earlier" and the existence of "error of the most fundamental character."   See <u>Riedl</u>, 496 F.3d at 1006 (citation omitted).

### *C. Assumptions*

As to the second <u>Hirabayashi</u> element, for the sake of argument, the court is assuming that the petitioner has met his burden of "*affirmatively* demonstrat[ing] valid reasons why"[6] he did not earlier challenge his guilty plea and sentence.  See <u>Rianto v. United States</u>, 2012 WL 4863793, at * 6 (E.D.Cal. Oct. 12, 2012) (citing <u>Hirabayashi</u>, 828 F.2d at 604) (emphasis added).

Additionally, the court will assume *arguendo* that, as the petitioner argues, when he pled guilty to and was sentenced for, defrauding the Government in violation of 18 U.S.C. § 286, the terms of the relevant immigration statutes, *i.e.* 8 U.S.C. § 101(a)(43)(M)(i)[7] and 8 U.S.C. § 1227(a)(2)(A)(iii),[8] were "unambiguous and made

---

[6]      This is a generous assumption given the scant factual record on the timeliness issue. Conspicuously absent from the petitioner's affidavit is any mention of why he delayed in filing this motion.  The petitioner did aver that he has read "the Motion . . . and agree[s] with its factual contents." Mot. (Doc. 1), exh. 3 (Doc. 1-3) thereto at 2:14-15, ¶ 1.  Even if that bare assertion amounted to an affirmative demonstration of the relevant facts, it does not assist the petitioner.  That is because his motion is silent as to whether he had a valid reason for the delay.  The unsworn allegations in his reply, such as that at an unspecified time during his second attempt to obtain citizenship, "he was finally advised as to the automatic deportation nature of his conviction[]" are not sufficient to meet his burden of proof on this issue.  See Reply (Doc. 16) at 3:15-16.

Moreover, given that the petitioner's attorney representation of the petitioner ended after the  1999 sentencing, understandably, his declaration does not shed any light on the delay issue.  <u>See</u> Resp. (Doc. 10), exh. 24 (Doc. 10-1) thereto at 68, ¶ 2.  Despite these deficiencies, as set forth above, the court has given the petitioner the benefit of the doubt on this issue.

[7]      That statute provides that "[a]s used in this chapter --- [t]he term 'aggravated felony' means - - - an offense that – involves fraud of deceit in which the loss to the victim or victims exceeds $10,000.  8 U.S.C. § 1101(a)(43)(M)(i).

[8]      Section 1227, enumerating "[c]lasses of deportable aliens" provides in relevant part that "[a]ny alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: . . . [a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).

Petitioner's deportation presumptively mandatory as a result of his plea."  See United States v. Krboyan, 2011 WL 2117023, at *10 (E.D.Cal.  May 27, 2011); but see United States v. Leger-Monegro, 2014 WL 1785067, at *5 (M.D.Pa. May 5, 2014) (citing cases) ("The *Padilla* majority favorably cited Justice Alito's concurrence explaining that it is not often clear whether a crime is covered by 8 U.S.C. § 1227(a)(2)(A)(iii).")

Lastly, the court will assume *arguendo* that, as the petitioner urges, the Ninth Circuit's 2005 decision in Kwan, 407 F.3d 1105, applies retroactively in this case.[9]

---

[9]     There is some authority, albeit outside this Circuit, to support this assumption. In Kwan, adopting the Second Circuit's view in United States v. Couto, 331 F.3d 179 (2d Cir. 2002), the Ninth Circuit held that "where . . . counsel has not merely failed to inform, but has effectively mislead, his client about the immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence." Kwan, 407 F.3d at 1015.  Reasoning that Couto "did nothing more than apply the age-old principle that a lawyer may not affirmatively mislead a client[,]"  in Kovacs v. United States, 744 F.3d 44 (2d Cir. 2014), the Second Circuit applied Couto retroactively even though it "was decided the year after Kovacs' 2001 conviction became final."  Id. at 50.

Although Kovacs lends support to the assumption of retroactively applying Kwan here, the court is keenly aware that in this Circuit it "remains an open question whether a petitioner . . . whose conviction was final in the Ninth Circuit before . . . *Padilla* can still rely on . . . *Kwan* to bring an ineffective assistance of counsel based on an allegation that his lawyer affirmatively mis[]a[d]vised him about the immigration consequences of a plea and resulting criminal conviction."  United States v. Ifenatuora, 2013 WL 3283634, at *9 (E.D.Cal. June 27, 2013), *adopted by* United States v. Ifenatuora, 2013 WL 5348221 (E.D.Cal. Sept. 23, 2013).  In considering the possibility that Kwan survives Chaidez, the court in Ifenatuora explained:

> [T]he Supreme Court in in Chaidez did not say   or indicate in any way that *Padilla* abrogated, overruled    or otherwise nullified the holding in *Kwan*. To the contrary, the Supreme Court in *Chaidez* mentions *Kwan* as one of a minority of decisions that had applied *Strickland* to a lawyer's advice on the immigration consequences of a conviction before *Padilla* and said that those cases   'recognized a separate rule for material misrepresentations     . . . . That limited rule does not apply in Chaidez's case.'

Id. (internal quotation marks and citation omitted).

Continuing, the Ifenatuora court opined that "[b]y the Supreme Court's reasoning in *Chaidez* then, it is arguable that *Kwan's* 'separate rule' survives *Chaidez* precisely because it is separate and not subsumed by *Padilla*."  Id.; contra Chavarria v. United States, 739 F.3d 360, 364 (7th Cir. 2014) ("determin[ing] that  the distinction between affirmative misadvice and failure to advise does not somehow evade the non-retroactivity of Padilla[]").  In Ifenatuora, because the issue was "an academic one[,]" the court declined to reach it and found that the petitioner's ineffective assistance of counsel claim had no merit.  Id.  The issue of Kwan's viability after Chaidez is pending  before the Ninth Circuit in the appeal of Ifenatuora.  See United States v. Ifenatuora, No. 13-16991, Answering Brief of the United

Even with the advantage of three assumptions just outlined, the court is unable to find that petitioner has met his burden of showing that he is entitled to the "highly unusual remedy" of a writ of coram nobis.  See Riedl, 496 F.3d at 1005.  That is because, as fully discussed below, Kwan, which now necessarily is the sole legal basis for the petitioner's request, is wholly distinguishable from the present case.

### D.  Error of the Most Fundamental Character

Ineffective assistance of counsel will satisfy the fundamental error requirement for coram nobis relief.  Kwan, 407 F.3d at 1014 (citing, *inter alia*, United States v. Mett, 65 F.3d 1531, 1534 (9th Cir. 1995) (explaining that "[a]n individual no longer in custody may employ the rarely-used writ of coram nobis to make a Sixth Amendment assistance of counsel attack on his conviction").   To prevail on an ineffective assistance of counsel claim, the petitioner must establish the by now familiar two-prong test set forth in Strickland, 466 U.S. 668, 104 S.Ct. 2052.  "First, the defendant must show that counsel's performance was deficient."  Id. at 687, 104 S.Ct. 2052.  "Second, the defendant must show that the deficient performance prejudiced the defense."  Id.   It is incumbent upon the petitioner to satisfy both prongs of the Strickland test; otherwise, his ineffective assistance of counsel claim fails.  See id.  "Surmounting *Strickland*'s high bar is never any easy task."  Padilla, 559 U.S. at 371, 130 S.Ct. 1473 (citations omitted).

### a.  Deficient Performance?

"*Strickland 's* first prong requires that 'the defendant . . . show that counsel's representation fell below an objective standard of reasonableness."  Murray v. Schriro, 745 F.3d 984, 1011 (9th Cir. 2014) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052).  "[T]he relevant inquiry.  .  . is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable."  Id. (internal quotation marks and citation omitted).   In making this inquiry, the Supreme Court has recognized that "[c]ounsel must have 'wide latitude . . . in making tactical decisions,' and [that] '[j]udicial scrutiny of counsel's performance must be highly deferential.'"  Hedlund v.

States (Doc. 14-1) at 47.  That appeal is not yet fully briefed.  The appellant's reply is due June 19, 2014, and oral argument has not yet been set

Ryan, 2014 WL 1622765, at *13 (9th Cir. April 24, 2014) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052).  As the Strickland Court explained:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland, 466 U.S. at 689, 104 S.Ct. 2052.

Acknowledging the "difficulties inherent in making th[is] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688, 104 S.Ct. 2052.  Consequently, "the burden to 'show that counsel's performance was deficient' rests squarely on the defendant[.]" Burt v. Titlow, --- U.S. ----, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. ----, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2013) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).  Petitioner Velazquez has not met this heavy burden

Post-Chaidez, at this juncture and as earlier noted, Kwan is the only legal authority for the petitioner's argument that his counsel's performance was deficient under Strickland.   In United States v. Fry, 322 F.3d 1198 (9th Cir. 2003), the Ninth Circuit "held that an attorney's failure to advise a client of the immigration consequences of a conviction, without more, d[id] not constitute ineffective assistance of counsel under Strickland." Kwan, 407 F.3d at 1015.  Kwan provided the "more" where the defense counsel did "not merely fail[] to inform, but . . . effectively misled, his client about the immigration consequences of a conviction[.]" Id.   Kwan specifically "asked [his] counsel whether pleading guilty would cause him to be deportable, and counsel chose to advise him." Id. at 1015-1016 (emphasis in original).  Kwan's counsel "assured Kwan that . . . deportation, . . . 'was not a serious possibility.'" Id. at 1008.  The Ninth Circuit found this assurance "grossly inaccurate" given the change in law between the time

Kwan pled guilty and his sentencing.  Id. at 1016.  When Kwan pled guilty, he "was potentially eligible for various downward adjustments that, if granted, could reduce his sentence to less than one year[,]" also potentially avoiding deportation.  Id.  In the interim, however, the definition of an aggravated felony was changed,  which meant that Kwan "had pled guilty to an offense that would almost certainly cause him to be deported." Id.  at 1009.

Despite "counsel['s represent[ing] himself as having expertise on the immigration consequences of criminal convictions[,]" the Ninth Circuit pointed out that he "either failed to keep abreast of relevant and significant  changes in the law or failed to inform Kwan of those changes' effect on the deportation consequences of Kwan's conviction." Id. at 1016.  Either way, "counsel never advised Kwan of the options that remained open to him prior to sentencing, and counsel never informed the sentencing judge that a sentence only two days shorter than the sentence ultimately imposed would enable Kwan to avoid deportation and remain united with his family."  Id.  Based upon the foregoing, the Kwan Court held that "counsel's performance was objectively unreasonable and me[]t[] the first prong of the *Strickland* test." Id. at 1017.

Again, operating under the assumption that Kwan applies retroactively in this case, the record facts are a far cry from the fairly egregious facts in Kwan.   The petitioner avers, as mentioned earlier, that "[w]hen [he] entered into [his] plea agreement, [he] was not aware that this type of conviction would have precluded [him] from remain[ing] in the United States with [his] family."  Mot. (Doc. 1), exh. 3 (Doc. 1-3) thereto at 2:16-18, ¶ 2 (footnote added).   There is a critical omission from the petitioner's affidavit, however.  Nowhere does he specifically aver, or even hint at the possibility, that his defense counsel "affirmatively" or "effectively" misled him as to the immigration consequences of his guilty plea, as Kwan requires.  See Kwan, 407 F.3d at 1008; and at 1015.

Likewise, the unsworn allegations in the petitioner's motion do not in any way advance his argument that his attorney's performance was deficient under Kwan.  In his motion, the petitioner alleges "lack of information" in that "[h]e was not properly advised

of this presumptively, or, virtually mandated deportation which would inevitably result" from his plea of guilty. Mot. (Doc. 1) at 5:27; and at 5:16-18. Likewise, the petitioner's motion alleges that his attorney "failed to properly advise [him] as to [the petitioner's] imminent deportation based on a conviction of this nature." Id. at 7:19-20. As is abundantly clear, however, Kwan requires far more than a mere lack of information to sustain an ineffective assistance of counsel claim. See Vazquez-Villanueva v. United States, 2013 WL 5176800, at *3 (W.D.Wash. Sept. 12, 2013) (Kwan did not support an ineffective assistance of counsel claim where petitioner contended that his counsel "never" provided him "any information about the immigration consequences of a guilty plea").

The petitioner's unsubstantiated assertion that he "was actually provided with incorrect information [or "misinformation"], as to his chances of remaining in the United States notwithstanding this type of conviction[]" id. at 5:21-23; and 27, also is not sufficient to bring his ineffective assistance of counsel claim within the ambit of Kwan. See United States v. Guillen-Reyes, 2009 WL 3061985, at *5 (S.D.Cal. Sept. 24, 2009) (ineffective assistance of counsel claims "fails because it is unsupported by the record . . . in that [the] Petitioner provide[d] no evidentiary support to show defense counsel affirmatively misled him[]"). Similarly unavailing is the petitioner's bald assertion that not just his counsel, but also the United States and this court gave him "a false realistic belief that he had . . . some opportunity to remain lawfully in the United States, when . . . he did not[.] See id. at 5:24-25 (citation omitted). Tellingly, to support this assertion the petitioner merely cites to his affidavit, which does not in any way elucidate upon this supposedly "false realistic belief[.]" See id. at 5:24. Furthermore, the evidence belies this unsupported assertion. At his plea hearing, the court pointedly asked the petitioner if he had "any questions that [he] wish[ed] to ask [the court] or [his] lawyer or the prosecutor" for the United States. Resp. (Doc. 10), exh. 16 thereto (Doc. 10-1) at 22:9-11. The petitioner responded, "No." Id. at 22:12.

Attempting to show that Kwan governs here, relying upon this attorney's declaration, the petitioner claims that his attorney made a "critical error" in "that he

believed this conviction would have been considered 'a crime of moral turpitude[,]" [] for which the JRAD [Judicial Recommendation Against Deportation] procedure, . . . , may have applied." Reply (Doc. 16) at 4:25-27.   Attorney de la Vara did "recognize[]" that petitioner's "crime could have immigration consequences."   Resp. (Doc. 10), exh. 24 thereto (Doc. 24-1) at 68, ¶ 5.  He also declares that he "knew" that petitioner's crime "could be classified as a crime involving moral turpitude[.]"  Id.    Although attorney de la Vara spoke with the United States "about these concerns," he did not speak with the petitioner.  See id.  Moreover, there is no mention in attorney de la Vara's declaration, or elsewhere in the record of the possibility of the JRAD procedure here.   That is understandable given that "in 1990[,]" well before petitioner Velazquez's plea and sentencing, "Congress entirely eliminated . . . the JRAD provision[.]"  See  Padilla, 559 U.S. at 362, 130 S.Ct. 1473.

Regardless, attorney de la Vara's does "not recall discussing with [the] petitioner whether the criminal conviction would be classified as an aggravated felony[,]" a fact which is uncontradicted.  See Mot. (Doc. 10), exh. 24 thereto (Doc. 10-1) at 68, ¶ 4. Under these circumstances, the petitioner's attorney did not affirmatively mislead him, as did Kwan's attorney.  It is also noteworthy that unlike Kwan's attorney,  attorney de la Vara did not "represent himself as having expertise on the immigration consequences of criminal convictions."  See Kwan, 407 F.3d at 1016.  Accordingly, even if attorney de la Vara was mistaken as to whether the petitioner's crime was one of moral turpitude or an aggravated felony, there is nothing in the record that he advised petitioner of this.  Quite simply, "[w]ithout evidence that [petitioner's attorney] gave incorrect advice or evidence that he failed to give material advice, [the petitioner] cannot establish that his performance was deficient.'"  See Burt, 134 S.Ct. at 17  (internal quotation marks and citation omitted).  That is because, as the Burt Court admonished the Sixth Circuit, "[i]t should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"  Id.

The other record evidence is similarly lacking and, indeed, belies the petitioner's

unsubstantiated allegations in his motion.   As with the petitioner's affidavit, not surprisingly, attorney de la Vara's declaration does not suggest in any way that he "affirmatively" or "effectively misled" the petitioner as to the immigration consequences of his pleading guilty.  See Kwan, 407 F.3d at 1008; and 1015.  Attorney de la Vara was aware that the petitioner "was a Mexican citizen with lawful immigration status in the United States, and that his main concern was . . . to remain in the United States with his family."  Resp. (Doc. 10), exh. 24 thereto (Doc. 10-1) at 68, ¶ 3.    Attorney de la Vara explains that the United States "did agree . . . to ask the Court to recommend to the . . . INS that [the petitioner] not be deported as a result of the conviction."   Id. at 68, ¶ 5.  The plea agreement reflects this recommendation.   See Mot. (Doc. 1), exh. 1 thereto (Doc. 1-1) at 9-10, ¶ 3(h)(2).    Not only that, during the plea hearing, the court reiterated that the United States could be making such a recommendation, reminding him that it was "within [the court's] discretion whether to follow this recommendation, which means [the court] can choose to follow it and make the recommendation to INS or [it] can choose not to follow it and not make a recommendation to INS[.]"  Resp. (Doc. 10), exh. 16 thereto (Doc. 10-1), at 18:13-7.  Continuing, the court explicitly asked the petitioner whether he "underst[oo]d that[,]" and he responded, "Yes, sir."  Id. at 18:17-18.

In keeping with the foregoing, attorney de la Vara did inform the petitioner "that it was up to the INS whether he would be deported,  but that in [de la Vara's] experience, the INS usually followed the Court's recommendation about deportation."  Id., exh. 24 thereto (Doc. 10-1) at 68-69, ¶ 6.  Attorney de la Vara did "anticipate[] that this [recommendation] would likely allow [the petitioner] to stay in the United States[,]"  but, he did not tell the petitioner that.  See id. at 68, ¶ 5.  Instead, he candidly "told" the petitioner, that he "could not guarantee what the INS would do, even with the Court's recommendation."  Id.  at 68, ¶ 6.  Moreover, although  the petitioner's attorney "did not believe . . . that the [petitioner's] guilty plea or criminal conviction . . . would necessarily result in deportation[,]"  id. at 68, ¶ 4, he "did not promise [the petitioner] that he would not be deported[.]"  Id.   And, in fact, the plea agreement recites, among other things, that no one made any promises to the petitioner in exchange for his plea of guilty.  See Mot.

- 20 -

(Doc. 1), exh. 1 thereto (Doc. 1-1) at 16:20-25.   Not insignificantly, the plea agreement further indicates that the petitioner was "satisfied that [his] defense attorney ha[d] represented [him] in a competent manner[,]" and that the petitioner was "fully capable of understanding  the terms and conditions of th[at] . . . agreement." Id. at 17:16-19.

As the foregoing readily shows, the present case stands in sharp contrast to Kwan, who directly asked his lawyer, who "represented himself as having expertise on the immigration consequences of criminal convictions[,]" whether his guilty plea would render Kwan deportable, and his lawyer effectively  misled him.  See Kwan, 407 F.3d at 1016.   Petitioner Velazquez did not specifically inquire of his lawyer as to the immigration consequences of his guilty plea.  Far more importantly, however, is that attorney de la Vara did not, in any way, effectively or affirmatively mislead the petitioner.  Nor did attorney de la Vara represent to the petitioner that he was an expert in the immigration consequences of criminal convictions, as did Kwan's attorney.  In sum, "judg[ing] the reasonableness" of attorney de law Vara's conduct, viewed at that time, the court simply cannot find that he acted "outside the wide range of professionally competent assistance." See Strickland, 466 U.S. at 690, 104 S.Ct. 2052.  This is all the more so taking into account that in the pre-Padilla world in which the petitioner's counsel was operating, criminal defense counsel, such as Mr. de la Vara, had no duty to expressly advise a client of the immigration consequences of a criminal conviction.  See Padilla, 559 U.S. at 365, 130 S.Ct. 1473 (internal quotation marks, citation and footnote omitted) (recognizing that in 2008, and prior thereto, "[t]he Kentucky high court [wa]s far from alone in [it]s view[]" that "collateral consequences are outside the scope of representation required by the Sixth Amendment, and, therefore, the failure of defense counsel to advise the defendant of possible deportation consequences is not cognizable as a claim for ineffective assistance of counsel[]").

### b. Prejudice?

Having found that the petitioner has not met his burden of showing that his attorney's performance was deficient under the first prong of Strickland, the court could end its inquiry here.  See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no

reason for a court . . . to approach the [Strickland] inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.")   However, because the United States expressly objects to the prejudice finding in the R & R, as part of its de novo review, the court will proceed to address prejudice -- the second Strickland prong.

"Strickland's second prong  requires that "[t]he defendant . . . show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"   Murray, 745 F.3d at 1011 (9ᵗʰ Cir. 2014) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.   "In the context of a plea, a petitioner satisfies the prejudice prong of the Strickland test where 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Smith v. Mahoney, 611 F.3d 978, 986 (9ᵗʰ Cir. 2010) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).   Put differently, a petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." See Padilla, 559 U.S. at ___, 130 S.Ct. 1473 (citing Roe v. Flores–Ortega, 528 U.S. 470, 480–81, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)). Petitioner Velazquez is unable to make that showing.

The petitioner claims that his lawyer's supposedly deficient performance prejudiced him because "he is now facing deportation and separation from his family."[10] Mot. (Doc. 1) at 8:23-24.  Acknowledging the use of "hindsight,"  the petitioner avers, as set forth at the outset, that if he had "known that his conviction would result in [his] automatic deportation, [he] most likely would have tried to work out a different plea agreement with the government, which would not have resulted in [his] deportation,  or, [he] would have taken the matter to trial." Id., exh. 3 thereto  (Doc. 1-3) at 2:19-22, ¶ 3.

---

[10]   The petitioner has not shown that he has actually been ordered to be deported, only that he was notified by letter dated November 8, 2010, that he was "currently in removal proceedings" and those proceedings had "not been terminated."  Resp. (Doc. 10), exh. 23 thereto (Doc. 10-1) at 66.

1    In his reply, the petitioner posits that "[a]s to prejudice, one must always speculate."

2    Reply (Doc. 16) at 5:3.  Even if the court agreed with that supposition (which it does not),

3    speculation is not a substitute for demonstrated prejudice.

4         The sole predicate for the Magistrate Judge's finding of prejudice is the

5    petitioner's averment that had he "been advised that his plea would subject him to

6    mandatory deportation, he would have proceeded to trial."  See R & R (Doc. 18) at 18:4-

7    6.  The United States objects to this conclusion as it is based on the petitioner's affidavit

8    only, and does not account for other contradictory record evidence.   Further, the United

9    States contends that the petitioner "cannot show prejudice because he cannot show how

10   his chances for avoiding deportation could have been any better."  Obj. (Doc. 19) at 3:4-

11   5.

12        The United States' position is well-taken.   The "mere allegation that [the

13   petitioner] would have insisted on going to trial is insufficient to establish prejudice."

14   Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003) (internal quotation marks and

15   citations omitted); see also United States v. Jazquez-Diaz, 2009 WL 249430, at *5

16   (D.Ariz. Feb. 2, 2009) (citing  Key v. United States, 806 F.2d 133, 139 (7th Cir. 1986))

17   ("To meet the second prong of the Strickland test, . . . , Movant's assertion that he would

18   not have pleaded guilty must be more than a mere allegation.")   This lack of evidence is

19   particularly glaring given, as the United States points out and the R & R did not mention,

20   that petitioner's attorney "believed the evidence against [him] was strong, and [he] did

21   not believe that  [the petitioner] had any viable trial defenses."  Resp. (Doc. 10), exh. 24

22   thereto (Doc. 10-1) at 69, ¶ 7.  The petitioner offers nothing to counter his attorney's

23   assessment.  For example, he has not shown "how he might have been able to avoid

24   conviction or what specific defenses or evidence might have been available to him at

25   trial."  See Jazquez-Diaz, 2009 WL 249430, at *5.   What is more, as the petitioner's

26   attorney explains, the United States "did not offer [the petitioner] a plea agreement to any

27   other offense to help him avoid immigration consequences[,]" another piece of evidence

28   which the R & R omits.  See Resp. (Doc. 10), exh. 24 thereto (Doc. 10-1) at 68, ¶ 5.

The petitioner strongly implies that when he pled guilty, he faced a stark choice between pleading guilty and being deported or going to trial and avoiding deportation. A trial would not have eliminated completely the possibility of deportation, however. As the court soundly reasoned in Jazquez-Diaz:

> While it is true that by insisting on trial [the petitioner] would have retained a theoretical possibility of evading the conviction that rendered him deportable and excludable, it is equally true that a conviction following trial would have subjected him to the same immigration consequences and, likely, a longer sentence.

Jazquez-Diaz, 2009 WL 249430, at *5. This reasoning applies with equal force here. Finally, while certainly not dispositive, the court cannot overlook the fact that ultimately the petitioner received a "substantial downward departure[]" to a four year term of probation, rather than a prison sentence which would have been the result of a conviction at trial. See Resp. (Doc. 10), exh. 17 thereto (Doc. 10-1) at 27:13.

In sum, engaging in de novo review persuades this court that petitioner Velazquez has not shown, as he must, "that a decision to reject the plea bargain would have been rational under the circumstances." See Padilla, 559 U.S. at 372, 130 S.Ct. 1473 (citation omitted). As a result, just as with his claim of deficient performance under Strickland, the petitioner has not met his burden of showing prejudice under Strickland.

Because petitioner Velazquez has shown neither deficient performance by his counsel, nor prejudice, his ineffective assistance of counsel claims fails. Thus, necessarily, he has not shown error of the most fundamental character – an essential prerequisite to obtaining coram nobis relief.

### III.  Expungement

As part of its de novo review, the court will briefly address the petitioner's alternative argument seeking expungement of his criminal record. Necessarily the Magistrate Judge did not address this argument because he recommended granting the petitioner his primary relief under the writ of coram nobis.

Relying solely upon this court's inherent equitable power, the petitioner is seeking

to have the court completely expunge his criminal record in this case.    In opposing expungement, the United States asserts that the two cases upon which the petitioner is relying are easily distinguishable.    While that is a valid point, there are two more compelling reasons for denying expungement here.

The first is that this court lacks jurisdiction to entertain the petitioner's expungement motion, which is based solely upon equitable considerations.   See United States v. Crowell, 374 F.3d 790, 796 (9th Cir. 2004)  (citations omitted) (district court lacked jurisdiction to consider defendant's claim which fell into "the category of [a] solely 'equitable' claim for expungement[]")  That is because "[t]he ancillary jurisdiction of the federal court is 'limited to expunging the records of an unlawful arrest or conviction, or to correcting a clerical error.'"   United States v. Davis, 2014 WL 935355, at *3 (C.D.Cal. March 10, 2014) (quoting United States v. Sumner, 226 F.3d 1005, 1014 (9th Cir. 2000)).    Second, petitioner Velazquez was not successful in getting his conviction vacated.  Therefore, he is not entitled to seek expungement of his criminal record.   See id. ("Having been lawfully convicted, if  [the defendant] wishes to expunge his records of conviction, she must first obtain a judgment that her conviction was unlawful."); see also 28 James Wm. Moore et al., *Moore's Federal Practice* §  672.02[e] (3d ed. 1999) ("[I]t is only after the underlying conviction has been vacated that a successful defendant can seek expungement[.]")   The petitioner "cannot use a motion for expungement to make an 'end-run' around recognized post-convictions remedies[.]"   Id. (citation omitted).   Accordingly, the court finds no merit to the petitioner's alternative argument seeking expungement of his criminal records.

## IV.  Certificate of Appealability

Finally, because the certificate of appealability ("COA") "requirement does not apply to coram nobis proceedings[]" such as the present one,  there is no need to grant a COA here; and the court declines to adopt the R & R's recommendation to do so.  See Kwan, 407 F.3d at 1009.

## Conclusion

Having  reviewed  the  Amended  Report  and  Recommendation  of  the  Magistrate

Judge (Doc. 18), and the United States' objections thereto (Doc. 19), the court hereby rejects the Magistrate Judge's recommendations.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Matias Velazquez's "Motion to Vacate Plea of Guilty & Set Aside Judg[]ment/Motion for Expungement" (Doc. 1) is **DENIED**, terminating this case.   The Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Clerk of Court shall furnish a copy of this order to Magistrate Judge Anderson.

Dated this 16th day of June, 2014.

Stephen M. McNamee
Senior United States District Judge